UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| USA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>JAMES ROSS,<br><br>　　　　　Defendant. | Case No. 13-cr-00638-JST-1<br><br>**ORDER DENYING MOTIONS TO DISMISS AND FOR A BILL OF PARTICULARS** |

A grand jury indicted James Ross on four counts of money laundering: three counts of "concealment" money laundering pursuant to 18 U.S. Code § 1956(a)(1)(B)(i)[1] and one count of "transactional" money laundering pursuant to § 1957(a).  Ross moves to dismiss the indictment pursuant to Rule 12 of the Federal Rules of Criminal Procedure.  In the alternative, Ross seeks leave to request a bill of particulars.  The Court will DENY Ross' motions.

## I.   INTRODUCTION

A grand jury indicted Ross on September 26, 2013, within the five-year statute of limitations for money laundering.  Indictment, ECF No. 1 at 1 ("Indict."); § 3282.  According to the indictment, between 2007 and 2010 Ross gained access to approximately $3.4 million by promising three investors he would use their money to fund a condominium construction project in Oakland, California.  Id. ¶¶ 8, 9.  Contrary to that promise, Ross allegedly transferred the investors' money to an account over which he had control, but which he opened in his mother's name in an attempt to conceal his activities, and then used the money for personal ends unrelated to the construction project.  Id. ¶¶ 8, 10-11.  In support of this allegation, the indictment catalogs three wire transactions in late 2007 and early 2008 that Ross allegedly executed to stock the

---

[1] All statutory references hereinafter are to Title 18, U.S. Code, unless noted otherwise.

account with the investors' money—thus committing wire fraud in violation of § 1343. Id. ¶ 13.

The indictment does not directly charge Ross with wire fraud.[2] Instead, the indictment alleges that Ross transferred the ill-gotten proceeds of wire fraud to third parties, and thus wire fraud is the predicate offense for the money laundering charges. Id. ¶¶ 16, 18. The transactions on which the concealment charges are based include three checks Ross wrote in October 2008 that were drawn from the account his mother nominally owned. Id. ¶ 16. The transactional charge involved a single $15,000 check drawn on the same account. Id. ¶ 18.

## II.  THE INDICTMENT

Ross moves to dismiss the indictment for two reasons. First, Ross claims the delayed indictment caused him actual prejudice. ECF No. 27 at 3. Second, Ross claims the United States failed to allege key facts, rendering the indictment legally insufficient. Id. at 10.

### A.  Prejudicial Pre-Indictment Delay

Ross claims that the United States was aware of his alleged wire fraud and money laundering well before his indictment, and that the United States' delay in indicting him caused him actual prejudice in violation of his Fifth Amendment rights. Id. at 3-4.

#### 1.  Legal standard

The Fifth Amendment to the United States Constitution guarantees the accused due process, which prevents prosecutorial bodies from engaging in prejudicial pre-indictment delay. See, e.g., United States v. Barken, 412 F.3d 1131, 1134 (9th Cir. 2005). Statutes of limitations are the primary safeguard against dilatory prosecution, id. at 1135 ("the statute of limitations is typically adequate protection for a defendant's rights"), and an "indictment is rarely dismissed because delay by the prosecution rises to the level of a Fifth Amendment due process violation," id. at 1134.

---

[2] Ross objects to the fact that, while the statute of limitations for wire fraud had expired when the United States charged him with money laundering, the time-barred wire fraud charge is the predicate offense for the money laundering charges. ECF No. 27 at 1-3, 5. But the money laundering statute contemplates that predicate offenses and associated money laundering charges have different start- and end-dates, see United States v. Nunez, 419 F. Supp. 22d 1258, 1266-67 (S.D. Cal. 2005), and Ross has cited no authority that requires money laundering charges to be filed within the statute of limitations for the offense on which the charges are predicated.

To establish that pre-indictment delay violates due process, a defendant must show (1) "actual, non-speculative prejudice from the delay," and (2) that the delay "offends those fundamental conceptions of justice which lie at the base of our civil and political institutions." Id. (quoting United States v. Doe, 149 F.3d 945, 948 (9th Cir. 1998)). "[G]eneralized assertions of the loss of memory, witnesses, or evidence are insufficient to establish actual prejudice . . . ." United States v. Manning, 56 F.3d 1188, 1194 (9th Cir. 1995). A court need not analyze the second Barken factor if a defendant cannot establish actual prejudice. Barken, 412 F.3d at 1134 (quoting Manning, 56 F.3d at 1194).

**2.     Analysis**

Both parties acknowledge that the United States indicted Ross within the statute of limitations for money laundering. See ECF No. 27 at 8; ECF No. 6. Ross, however, argues that his case is the rare instance where the statute of limitations has not adequately protected his Fifth Amendment rights. ECF No. 27 at 4-5.

Ross claims that the United States' delayed indictment prejudiced him in two ways. First, he states that two of the investors – potentially key witnesses for the prosecution – have poor memories, and that therefore they are "far less likely to remember critical information regarding [the deal Ross made with investors]" than typical witnesses would be. Id. at 7. Ross also alleges that the witnesses are privy to information that may absolve him, and that the United States' delay might cause this information to fade from their memories. Id.

Ross' claim is highly speculative. He does not allege that the investors have forgotten important details or what those details might be – merely that their poor memories, coupled with the passage of time, *might* dull their recollection of possibly useful information. Id. This sort of speculative loss of witness testimony does not satisfy a criminal defendant's "heavy burden" to show actual prejudice. United States v. Corona-Verbera, 509 F.3d 1105, 1112-13 (9th Cir. 2007) (holding that where a defendant fails to provide evidence of what witnesses would have testified to, "had their memories not dimmed[,] . . . any argument of prejudice is pure conjecture.")[3]

---

[3] Ross points to the fact that the potential witnesses have stated they cannot remember certain information, but nowhere indicates the witnesses would have remembered that information had the

3

(citation omitted); United States v. Moran, 759 F.2d 777, 782-83 (9th Cir. 1985) (relying on case law for the proposition that "protection from lost testimony generally falls solely within the ambit of the statute of limitations," and expressing doubt as to whether the loss of testimony of five witnesses who could have testified for defendant established actual prejudice). Furthermore, Ross emphasizes that the investors' memories are on record as becoming faulty within a week of being exposed to salient details. ECF No. 27 at 6. Taken as true, if the witnesses' memories fade so quickly, it is unclear how the indictment date altered Ross' ability to extract useful information from them. See Corona-Verbera, 509 F.3d at 1112 (explaining that, to show actual prejudice, the defendant "must show that lost testimony, witnesses, or evidence 'meaningfully has impaired his ability to defend himself'") (citation omitted).

Ross has not carried his "heavy burden" of showing the United States' delay in indictment caused him actual prejudice. Id.

Ross' second claim of actual prejudice is predicated on the fact that a potential witness has moved to China. ECF No. 27 at 8. Ross argues that the potential witness was a neutral third party to his interactions with the investors, and as such his or her testimony would be "invaluable" to him. Id. Ross marshals two cases in support of his argument: United States v. Barket, 530 F.2d 189 (8th Cir. 1976), and United States v. Sabath, 990 F. Supp. 1007 (E.D. Ill. 1998). In Barket, the court found prejudice due to pre-indictment delay after the prosecution waited forty-seven months to indict the defendant, six material witnesses had died, and the surviving witnesses had "extreme and understandable difficulty remembering relevant facts." 530 F.2d at 193. In Sabath, the court found actual prejudice where one witness left the country, three witnesses died, the agent assigned to investigate the crime no longer had independent memory of his investigation, and multiple pieces of physical evidence were lost during the United States' "reckless" and unjustified

---

United States brought the indictment at an earlier date. See ECF No. 27 at 6. According to the evidence Ross cites, the witnesses forget details within a week or "never remember anything," id., but this means that the same witnesses would have had memory difficulties regardless of when the United States brought its indictment. Accordingly, Ross cannot show prejudice. Ross also argues that in the delay between the United States' awareness of the alleged crime and the indictment, the witnesses' memories faded, id. at 7, but does not show how that alleged loss of memory affected their potential testimony at trial.

four-year delay in bringing the indictment after the investigation was complete. 990 F. Supp. 1007.

One witness of speculative value's potential unavailability does not approach the level of disadvantage the defendants in Barket and Sabath faced. Ross' claim is the kind of generalized assertion of the loss of witness testimony that the statute of limitations, alone, protects. See Moran, 759 F.2d at 782. Ross has not shown that the United States' delay in bringing the indictment actually prejudiced him.

### B. Adequacy of Facts Alleged in the Indictment

Ross also moves to dismiss the indictment because, in both the concealment and transaction money laundering charges, he claims the United States failed to allege certain key facts.

#### 1. Legal standard

Rule 7(c)(1) of the Federal Rules of Criminal Procedure requires that an indictment "be a plain, concise, and definite written statement of the essential facts constituting the offense charged." An indictment is sufficient if it:

> provide[s] the defendant with a description of the charges against him sufficient to (1) enable him to prepare his defense; (2) ensure him that he is being prosecuted on the basis of facts presented to the grand jury; (3) enable him to plead double jeopardy against a later prosecution; and (4) inform the court of the facts alleged so that it can determine the sufficiency of the charge.

United States v. Livingston, 725 F.3d 1141, 1145 (9th Cir. 2013) (citations and quotations omitted). "[T]he language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence . . . with which he is charged." Hamling v. United States, 418 U.S. 87, 117-18 (1974) (citation omitted). A court should read the indictment "in its entirety, construed according to common sense, and interpreted to include facts which are necessarily implied." United States v. Lazarenko, 564 F.3d 1026, 1033 (9th Cir. 2009). "[T]he question is not whether the indictment could have been framed in a more satisfactory manner, but whether it meets minimum constitutional standards." United States v. Awad, 551 F.3d 930, 936-37 (9th Cir. 2009)

(citation omitted).

### 2. Analysis

#### a. Concealment money laundering, § 1956(a)(1)(B)(i)

Section 1956(a)(1)(B)(i) makes it a crime for a person to

> [with knowledge] that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conduct[] or attempt[] to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity . . . knowing that the transaction is designed in whole or in part . . . to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity.

Accordingly, to prevail at trial, the prosecution must prove that Ross (1) conducted or attempted to conduct a financial transaction; (2) knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, or control of proceeds of specified unlawful activity; (3) knew that the proceeds were from unlawful activity; and that (4) the transaction actually involved proceeds of unlawful activity. United States v. Wilkes, 662 F.3d 524, 545 (9th Cir. 2011). And the indictment challenged here must at least allege these elements. United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999).

The language of the indictment tracks the above statutory language, alleging the elements of concealment money laundering. Indict. ¶ 16. The predicate "unlawful activity" is wire fraud. Id. The "transaction(s)" are the three transfers of funds via checks Ross wrote to third parties in 2008. Id. The indictment clearly alleges that Ross knew he obtained the disbursed funds through fraud, that those funds were actually derived from fraud, and that the disbursements were designed to conceal and disguise the nature, location, source, ownership, and control of the funds. Id.

Because the indictment alleges the elements of concealment money laundering, the remaining question is whether the indictment contains "such a statement of the facts and circumstances as will inform the accused of the specific offence . . . with which he is charged." Hamling, 418 U.S. at 117-18.

Ross claims that the indictment does not allege facts that show his "design[] . . . to conceal" under § 1956. ECF No. 27 at 11. Ross claims that without such factual support, the

6

1  United States is prosecuting him for "the innocent act of mere money spending." Id. Ross'
2  argument places a pleading burden on the government that is not supported by the case law.
3        The indictment, read as a whole, using common sense, and implying necessary facts,
4  alleges: the specific dates and victims of Ross' wire fraud; the transactions and representations
5  Ross made to the investors that constituted that fraud; the number of the bank account Ross used
6  to store the proceeds of the fraud; the specific dates, amounts, and recipients of Ross'
7  disbursement of the allegedly ill-gotten funds; and that Ross drew funds from a bank account he
8  opened in his mother's name in order to disguise the funds. Indict. ¶¶ 7, 10, 13. If Ross wrote
9  checks from a bank account he held in his mother's name, those check transactions could plausibly
10 be "designed to conceal" the location, source, ownership, and control of the allegedly ill-gotten
11 funds backing the checks. See ECF No. 35 at 2; United States v. Ladum, 141 F.3d 1328, 1340-41
12 (9th Cir. 1998).
13       Ross also contends that the indictment's allegations of concealment money laundering are
14 defective because the United States is using the fact that Ross established a bank account in his
15 mother's name both as evidence of an underlying wire fraud and as evidence of the concealment
16 money laundering. ECF No. 35 at 2-4. Ross argues that "the government cannot conflate the
17 transactions that allegedly create criminally derived proceeds with the transactions that allegedly
18 hide those proceeds, [and] that is exactly what the government is trying to do here." Id. at 3.[4]
19       In support of this argument, Ross relies chiefly on Wilkes, 662 F.3d 524, and Adefehinti,
20 510 F.3d 319. Id. at 2-4. Both Wilkes and Adefehinti do state the rule Ross articulates. But
21 neither case supports the relief Ross is requesting.
22       First, both cases involved appeals after conviction, rather than challenges to an indictment.
23 Wilkes, 662 F.3d at 530; Adefehinti, 510 F.3d at 321. Thus, the question before those courts was
24 whether there was sufficient information to sustain a conviction, not whether the government had
25 met its pleading burden.

---

[4] Ross raises this issue in his reply brief. See ECF No. 35 at 2-4. The Court generally will not address new arguments raised in reply, but Ross raised this potentially dispositive argument to respond to the United States' contentions in its opposition brief, so the Court will address it.

1        Second, and more fundamentally, the authority on which <u>Wilkes</u> and <u>Adefehinti</u> rely
2   actually supports the United States' position here, not Ross'.  Both <u>Wilkes</u> and <u>Adefehinti</u>
3   approvingly quote <u>United States v. Seward</u>, 272 F.3d 831, 836 (7th Cir. 2001), for the proposition
4   that "transactions that created the criminally-derived proceeds must be distinct from the money-
5   laundering transaction."  See <u>Wilkes</u>, 662 F.3d at 545 (quoting <u>Seward</u>); <u>Adefehinti</u>, 510 F.3d at
6   324 (same).  In <u>Seward</u>, the defendant used forged signature cards to open a joint bank account in
7   his own name and the name of another person whom he was impersonating named O'Neal.  272
8   F.3d at 836.  He then caused the bank to liquidate another of O'Neal's accounts and deposit the
9   funds in the new account.  <u>Id.</u>  Finally, he wrote two checks on the new account—one to pay his
10  own mortgage, and the other to make a deposit in a friend's account.  <u>Id.</u>  The <u>Seward</u> court found
11  that the act of *establishing* the new bank account as part of an underlying wire and bank fraud was
12  separate from the act of *writing checks* from that account, which supported a conviction for money
13  laundering.  <u>Id.</u> at 837.  Similarly, Ross' establishment of a bank account in his mother's name and
14  transferring proceeds from the investors' escrow accounts to that bank account can serve as bases
15  for the underlying wire fraud, while the writing of checks against the account—which conceals
16  Ross' true identity in those transactions—can serve as the basis of money laundering charges.

17       Finally, Ross compares the instant indictment to that in <u>United States v. Cecil</u>, 608 F.2d
18  1294 (9th Cir. 1979) (per curiam).  Ross correctly points out that the <u>Cecil</u> court dismissed an
19  indictment for failure to allege sufficient facts.  ECF No. 27 at 12.  Ross fails to acknowledge that
20  in <u>Cecil</u> the indictment only contained the generalized assertion that certain crimes occurred in
21  "Arizona, Mexico, and elsewhere" and the names of some of the co-conspirators to the crimes, but
22  "fail[ed] to state any other facts or circumstances pertaining to the [conspiracy or elements
23  thereof]."  608 F.2d at 1297.  What the <u>Cecil</u> court found most lacking was that the indictment
24  alleged open-ended timeframes in which the alleged crimes occurred; according to the indictment,
25  the crimes could have occurred at literally any point in time.  <u>Id.</u>  Only in light of these glaring
26  deficiencies did the <u>Cecil</u> court find the defendant unable to prepare his defense.  <u>Id.</u>

27       The instant indictment is more substantial than the one before the <u>Cecil</u> court.  The
28  indictment notifies Ross of the dates, actions, and key players involved in the alleged crimes – i.e.,

8

the facts supporting the money laundering charges – and thus allows him to prepare a defense. See United States v. Hymes, 113 Fed. App'x 755, 757 (9th Cir. 2004) (holding that an indictment was legally sufficient where the indictment "failed to list facts describing attempts to conceal the nature of the proceeds of unlawful activity" because the indictment "alleged each of the requisite elements of [concealment money laundering].") (citation omitted). The indictment here "meets minimum constitutional standards." Awad, 551 F.3d at 936-37.

### b.  Transactional money laundering, § 1957(a)

Section 1957(a) makes it a crime to "knowingly engage[] or attempt[] to engage in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity . . . ." The prosecution must therefore ultimately show that: (1) Ross knowingly engaged in a financial transaction; (2) Ross knew the transaction involved criminal property; (3) the property's value exceeded $10,000; and (4) the property was in fact derived from a specified unlawful activity. United States v. Messer, 197 F.3d 330, 341 (9th Cir. 1999).

The indictment precisely tracks the language and elements of § 1957. Indict. ¶ 18. The predicate "unlawful activity" is wire fraud. Id. The alleged "transaction" is the transfer of funds via a $15,000 check Ross wrote around October 8, 2008. Id. The indictment also clearly alleges that Ross knew the money was derived from his earlier wire fraud and that the money, in fact, came from the wire fraud. Id.

Because the indictment alleges all elements of the offense, the only question that remains is whether the indictment contains "such a statement of the facts and circumstances as will inform the accused of the specific offence . . . with which he is charged." Hamling, 418 U.S. at 117-18.

Ross correctly asserts that, to prove Ross committed transactional money laundering, the United States will have to show that more than $10,000 of the money Ross transferred was the product of his wire fraud. ECF No. 27 at 12-13; United States v. Rutgard, 116 F.3d 1270, 1292-93 (9th Cir. 1997). Ross claims that the funds in the $15,000 check were commingled with funds obtained by innocent means, and that the United States did not allege facts showing the check contained over $10,000 obtained in an unlawful manner. ECF No. 27 at 12-13.

9

At this point in the proceedings, Ross' argument is unavailing. Facts alleged in the indictment are deemed true. United States v. Blinder, 10 F.3d 1468, 1471 (9th Cir. 1993) (citation omitted). The indictment clearly alleges facts that, if taken as true, would establish that wire fraud occurred and that the check contained $10,000 obtained from that fraud. Indict. ¶¶ 7-14, 18. The United States is not required to prove, at this preliminary stage, that $10,000 of the $15,000 *actually* derived from the alleged wire fraud. It is enough to allege it. And the United States does not have to anticipate and respond to defenses in an indictment. United States v. Sipson, 399 U.S. 267, 288 (1970).

## III. BILL OF PARTICULARS

As an alternative to his motion to dismiss, Ross moves for leave to request a bill of particulars pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure. ECF No. 27 at 14.

### A. Legal Standard

A bill of particulars serves three purposes:

> (1) to inform the defendant of the nature of the charge against him with sufficient precision to enable him to prepare for trial; (2) to avoid or minimize the danger of surprise at the time of trial; and (3) to enable him to plead his acquittal or conviction in bar of another prosecution for the same offense when the indictment itself is too vague[] and indefinite for such purposes.

United States v. Trumpower, 546 F. Supp. 2d 849, 851 (E.D. Cal. 2008) (citing United States v. Giese, 597 F.2d 1170, 1180 (9th Cir. 1979)). Thus, to determine whether to order a bill of particulars, "a court should consider whether the defendant has been advised adequately of the charges through the indictment and all other disclosures made by the government." United States v. Long, 706 F.2d 1044, 1054 (9th Cir. 1983) (citation omitted). "To the extent that the indictment . . . provides details of the alleged offense, a bill of particulars is, of course, unnecessary." Giese, 597 F.2d at 1180 (quotation omitted).

### B. Analysis

Ross founds his request for a bill of particulars on the same claims he asserted in support of his motion to dismiss the indictment. Regarding the concealment money laundering charges,

10

Ross asserts the indictment does not allege facts pertaining to his intent to conceal. ECF No. 27 at 15. Regarding the transaction money laundering charge, Ross asserts the indictment does not allege facts showing more than $10,000 of the transferred funds derive from the alleged wire fraud. Id. Ross claims that because of this lack of information he is unable adequately to prepare a defense, and thus the Court should require the United States to file a bill of particulars to identify better the charges against him. Id. at 16.

Ross cites Trumpower as an example the Court should follow in granting a bill of particulars. Id. at 15. In Trumpower, the defendant was charged with money laundering. 546 F. Supp. 2d at 851. The indictment in Trumpower contained detailed allegations regarding the defendant's laundering of funds, but no details concerning the predicate crime that generated the ill-gotten funds. Id. The court found that without alleging any facts concerning the underlying crime, the indictment did not allow the defendant to adequately prepare for trial. Id. at 852.

As previously discussed, the indictment has made Ross aware of the dates and circumstances the United States will attempt to prove in its prosecution. The indictment includes a detailed account of Ross' alleged wire fraud – the underlying crime that was missing from the indictment in Trumpower. Overall, Ross has adequate notice of the charges against him, including their factual context. Indict. at 16; see Giese, 597 F.2d at 1181 ("[Defendant's] request for the 'when, where, and how' of [the alleged crimes] was equivalent to a request for complete discovery of the government's evidence, which is not a purpose of the bill of particulars."). Ross has failed to show that the Court should require the United States to file a bill of particulars.

## IV. CONCLUSION

For the foregoing reasons, Ross' motion to dismiss the indictment and for leave to request a bill of particulars is DENIED.

**IT IS SO ORDERED.**

Dated: July 29, 2014

JON S. TIGAR
United States District Judge

11